UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Joyce Lynn Serauskas, *Plaintiff*, v. Liberty Mutual Fire Insurance Co., *Defendant*. | No. 25-cv-12474 Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

This lawsuit arises from fire damage sustained at a home on West 51st Street in Chicago in August 2024. Following the fire, Joyce Lynn Serauskas filed an insurance claim with Liberty Mutual Fire Insurance Co., who issued a homeowner's policy for the home to Serauskas's mother, Estelle Bielecki, in 1978. [Dkt. 1-1, ¶¶ 7–8, 14.][1] The policy automatically renewed every year, and the premiums were timely paid, including as of the date of the fire. [*Id.*, ¶¶ 9-14.] There was just one problem: Estelle Bielecki died in 2010.

Following Edwin Bielecki's[2] death in 1984, Serauskas moved in with her mother Estelle, and they lived together at the home for many years. Even after Estelle's death, Serauskas continued living there up until the day of the fire in 2024. [*Id.*, ¶ 6–7.] In 2011, the executor of the Estelle's estate transferred undivided ½ interests in the Property to Serauskas and her sister as tenants in common. [*Id.*, ¶ 7.] Serauskas has since acquired full ownership of the property from her sister. [*Id.*, at ¶ 13.]

After Liberty Mutual denied the claim, Serauskas filed this lawsuit in state court. She brings claims for breach of contract and vexatious and unreasonable conduct in violation of § 155 of the Illinois Insurance Code, 215 ILCS 5/155. She also includes estoppel and equitable lien claims premised on allegations that Liberty Mutual "created a reasonable expectation of coverage" by "issuing renewals and accepting premiums" each year for more than a decade after Estelle's death. [*Id.*, ¶¶ 41, 46 ("Plaintiff owned the property. She paid the premiums. The Policy was plainly intended to insure the home. It would be unjust enrichment for Defendant to deny coverage after accepting premium payment from Plaintiff for 13 years.")]

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.
[2] To avoid confusion, the court refers to Estelle and Edwin Bielecki by their first names.

1

After Liberty Mutual removed the case to federal court, it filed a motion to dismiss. For the reasons below, the motion is granted, though some of the claims are dismissed without prejudice.

I.  **Legal Standard**

Liberty Mutual's motion to dismiss is premised in large part on standing. A motion to dismiss pursuant to Rule 12(b)(1) challenges the court's subject-matter jurisdiction, while a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims. "Standing is an essential component of Article III's case-or-controversy requirement." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Id.*

Whether styled under Rule 12(b)(1) or Rule 12(b)(6), the court takes well-pleaded factual allegations as true and draws reasonable inferences in favor of the plaintiff, *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023). The court evaluates only whether the factual allegations "plausibly suggest" the existence of subject-matter jurisdiction under the familiar *Iqbal–Twombly* standard for Rule 12(b)(6). *Id.* at 174; *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

III. **Analysis**

  A.  **Breach of Contract**

Liberty Mutual argues that the breach of contract claim must be dismissed because Serauskas lacks standing—she is not a party to the insurance contract and therefore cannot sue for breach. This argument boils down to a matter of contract interpretation, which is a question of law.[3] *CNC Sols. & Eng'g, LLC v. Korloy Am., Inc.*, 2022 WL 4608909, at *2 (N.D. Ill. Sept. 30, 2022); *Illinois Sch. Dist. Agency v. Pac. Ins. Co.*, 471 F.3d 714, 719 (7th Cir. 2006) ("in Illinois, the interpretation of an insurance policy is a question of law") (citing *Zurich Ins. Co. v. Walsh Constr. Co. of Ill., Inc.*, 816 N.E.2d 801, 805 (2004)).

A nonparty's right to enforce a contract is governed by state law. *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021). Under Illinois law, only a party to a contract, someone in privity with such a party, or an intended third-party beneficiary of the contract can bring a breach of contract claim. *Protect Our Parks, Inc. v. Buttigieg*, 97 F.4th 1077, 1089 (7th Cir. 2024); *City of Yorkville ex rel. Aurora Blacktop Inc. v. Am. S. Ins. Co.*, 654 F.3d 713, 714 (7th Cir. 2011) (affirming the trial court's

---

[3]  There is no dispute that Illinois law governs, so the court looks to Illinois law for principles of construction. *Page v. Alliant Credit Union*, 52 F.4th 340, 346 (7th Cir. 2022).

2

finding that the plaintiff was not a third-party beneficiary to the contract and lacked standing to sue under the contract at issue).

In construing contracts under Illinois law, courts "aim to ascertain the parties' intent by first consulting the plain and ordinary meaning of the contract language." *Page*, 52 F.4th at 346 (cleaned up). Illinois courts interpret contracts according to the "four corners rule," meaning that a written contract "speaks for itself, and the intention with which it was executed must be determined by the language used." *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992–93 (7th Cir. 2007) (quoting *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 878 (7th Cir. 2005)). If the contract's language is "clear and unambiguous," the court will not consider extrinsic evidence. *Camico*, 474 F.3d at 993. "An ambiguity exists ... if the contract's language is susceptible to more than one interpretation." *Id.* (citing *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999)).

There is no dispute that Estelle Bielecki is the "named insured" and the home on West 51st Street is the relevant Property described in the Policy. [Dkt. 13 at 4–5; Dkt. 1-1 at 41.] Because she is not a named insured, Liberty Mutual argues that Serauskas lacks standing to sue. It also notes that although the Policy contains an assignment provision, at no time prior to the fire in 2024 did Liberty Mutual provide written consent for assignment of the policy. [Dkt. 1-1 at 61 ("Assignment of this policy will not be valid unless we give our written consent."; Dkt. 13 (not responding to the argument).]

Serauskas's arguments in response are non-starters. First, she argues that no provision in the Policy required her to notify Liberty Mutual of Estelle's death, nor does the Policy say who should have received that notice. [Dkt. 13 at 3 ("[U]nder the terms of this policy, there is no notice requirement to the insurance company specifically regarding the death of the named insured, nor any specification as to who must provide such notice or under what conditions.")] This argument misses the point. The issue is not whether Serauskas was required under the Policy to notify Liberty Mutual of her mother's death. It's whether she qualifies under the relevant provision of the Policy as a named insured. She does not.

The Death provision of the Policy states in relevant part:

SECTIONS I AND II – CONDITIONS

\* \* \*

9. Death. If any person named in the Declarations or the spouse, if a resident of the same household; or the partner in a civil union, registered domestic partnership or similar union or partnership, if a resident of the same household, dies:

3

    a.    We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

    b.    "Insured" includes:

(1) Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

[Dkt. 1-1 at 61, 65.]

All agree that the person "named in the Declarations or [their] spouse" refers to Estelle and her spouse, Edwin. Edwin died in 1984, leaving Estelle as the sole owner of the Property and the named insured. [Dkt. 1-1, ¶¶ 6-7.] When Estelle died, the Death provision required Liberty Mutual to "insure the legal representative of the deceased" and "only with respect to the premises and property of the deceased covered under the policy at the time of death." [Dkt. 1-1 at 61.] Here, that means it was required to insure Estelle's legal representative, something Serauskas does not argue, let alone allege, that she was.

To meet the definition of "insured" under subsection 9(b) of the Death provision, Serauskas must have been *both* (1) a member of Estelle's household who was an "insured at the time of [Estelle's] death," while a resident of the Property; *and* (2) with respect to the Property, the person having "proper temporary custody of the property until appointment and qualification of a legal representative." [*Id.* (emphasis added)] Again, Serauskas does not suggest that she was the person having "proper temporary custody of the property" pending appointment of a legal representative. Quite the opposite, she alleges that those events took place in 2011 when "the Executor of the Estate of Estelle Bielecki [] transferred an undivided ½ interest to Plaintiff and the other undivided ½ interest to Plaintiff's sister [] as tenants in common." [Dkt. 1-1, ¶ 7.] By her own account, then, Serauskas is not Estelle's legal representative nor is she the person with "temporary custody of the property until appointment and qualification of a legal representative."

Serauskas resists this conclusion, arguing that she was the "insured" as defined elsewhere in the Policy. [Dkt. 13 at 6.] She points to a general definition of "insured" that defines the word to mean "you and residents of your household who are: a. Your relatives; or b. Other persons under the age of 21 and in the care of any person named above." [Dkt. 1-1 at 46.] According to Serauskas, because she "was a member of Estelle Bielecki's household at the time of Bielecki's death at the 'residence premises' … and remained so uninterrupted as resident of the premises up to and including the date of the fire," she was an "insured" as defined by the Policy at the time of the fire loss. [Dkt. 13 at 4.] The court cannot agree.

4

First, as Liberty Mutual points out, an endorsement to the Policy modified the general definition of insured, in particular the terms "you," "your," and "named insured":

The opening paragraph is deleted and replaced by the following:

In this Policy, "you" and "your" refer to the "named insured" shown in the Declarations and:

a. the spouse of the "named insured" shown in the Declarations, if a resident of the same household; or

b. The partner in a civil union, registered domestic partnership, or similar union or partnership, with the "named insured" shown in the Declarations, if a resident of the same household.

[Dkt. 1-1 at 65.] This definition forecloses any argument that Serauskas qualifies as an "insured" simply because she was a member of Estelle's household who was a relative. Even if her argument were correct, her brief does not engage with the plain language of the Death provision, which defines "insured" as a person who is *both* a member of Estelle's household *and* who has "proper temporary custody of the property until appointment and qualification of a legal representative."

Finally, Serauskas argues that Liberty Mutual "automatically renewed the Policy every year since Estelle's 2010 death," including a renewal covering the date of the fire (August 2024 through August 2025). [Dkt. 13 at 4–5.] She observes that Estelle would have been 107 years old as of the date of that renewal, something she says made it reasonable for Serauskas to conclude that "household-based coverage applied to Plaintiff under the Death clause." [*Id.* at 6.] Finally, the complaint alleges that Liberty Mutual "knew or should have known" that Estelle died prior to the renewal in 2012 but nevertheless issued a renewal each year without requiring Estelle (or anyone) to submit a new application.

The problem with this argument is that Serauskas cites to no language in the Policy that supports her arguments or interpretation. She cites only to allegations in her complaint.

Because there is no ambiguity about who was insured under the Death clause, and because the Policy does not otherwise define "insured" to include Serauskas, the court ends its inquiry. *Illinois Sch. Dist. Agency.*, 471 F.3d at 719 ("Under Illinois law, if the words of an insurance policy are unambiguous, we must give them their plain, ordinary and popular meaning…"); *Starstone Ins. SE v. City of Chicago*, 133 F.4th 764, 768 (7th Cir. 2025) (Illinois law "provides that language in an insurance contract must be taken to mean what the words say"). Serauskas's argument that she is a party to the insurance contract fails so Count One is dismissed.

### B. Vexatious and Unreasonable Conduct

Next, the court addresses Serauskas's vexatious and unreasonable conduct claim in violation of § 155 of the Illinois Insurance Code, 215 ILCS 5/155. "As described by the Supreme Court of Illinois, Section 155 provides 'an extracontractual remedy to policy-holders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable.'" *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1023 (7th Cir. 2013) (quoting *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 900 (Ill. 1996)).

Section 155 is a remedy for breach of contract and not a separate cause of action. *Hennessy Indus., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 770 F.3d 676, 679 (7th Cir. 2014). "[W]hen an insurer denies the claim of an insured because no coverage exists, the insurer has not failed to honor its contractual obligations under an insurance policy." *Id.* "As such, Illinois courts allow a cause of action to proceed under Section 155 only if the insurer owed the insured benefits under the terms of [an insurance] policy." *Dental Experts, LLC v. Mass. Bay Ins. Co.*, 536 F. Supp. 3d 318, 324 (N.D. Ill. 2021) (quoting *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 807 (7th Cir. 2002)).

Because the breach of contract claim is barred, Serauskas's Section 155 claim must also fail. *Woods v. American General Life Insurance Co.*, 2023 WL 3172616, at 8-9 (N.D. Ill. May 1, 2023) (because widow's breach of contract claim was untimely, she could not assert a section 155 claim); *Valladares v. Pruco Life Insurance Company*, 2022 WL 4181820, at *4 (N.D. Ill. Sep. 13, 2022) (claim under Section 155 can only proceed "if the insurer owes the insured benefits under the policy terms" and when insurer "correctly excludes coverage, the insurer has not acted vexatiously or unreasonably"). Count Two is also dismissed.

### C. Estoppel

In the alternative to her breach of contract claim, Serauskas brings an estoppel claim based on the insurance premiums she paid under the Policy following Estelle's death. Specifically, she alleges that Liberty Mutual misled her through its conduct because it "continuously accepted premiums after [Estelle's] death in 2010. The Policy was automatically renewed every year thereafter including in 2024 covering the date of the fire loss. No renewal application was required, and no notice of invalidity was provided. By issuing renewal policies and accepting premiums, Defendant represented—implicitly but clearly—that coverage was in force for over a decade." [Dkt 1-1, ¶ 37.]

Liberty Mutual argues that in the insurance context, estoppel "applies only where an insurer (Liberty Mutual) has breached its duty to defend." [Dkt. 10 at 6.] It cites to cases in which courts have held that an insurer who "takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured." *Employers Insurance*

6

*of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1134 (Ill. 1999); *CMK Dev. Corp. v. W. Bend Mut. Ins. Co.*, 917 N.E.2d 1155, 1163 (Ill. App. Ct. 2009).

This is only half right. "Estoppel often arises in cases involving close calls over whether an insurance policy covers a particular claim brought against an insured. In those circumstances, the insurer has a duty to defend the insured because the latter has received a claim alleging facts within or potentially within the coverage of the applicable policy." *Essex Ins. Co. v. Blue Moon Lofts Condo. Ass'n*, 927 F.3d 1007, 1012 (7th Cir. 2019) (explaining that this basic principle "that often bars an insurer from raising a policy defense to coverage[ is] commonly called "general" estoppel). In those circumstances, "'when the policy and the complaint are compared, [and] there was clearly no coverage or potential for coverage,' general estoppel does not apply." *Id.* (quoting *Employers Ins. of Wausau*, 708 N.E.2d at 1135). That principle applies here because, as discussed above, the absence of potential coverage is apparent from the face of Serauskas's complaint. General estoppel is therefore inapplicable.

"Illinois law recognizes a second form of estoppel—sometimes called equitable estoppel—that can force an insurer to do what general estoppel cannot: pay for a claim that falls outside the terms of the insurance policy." *Essex*, 927 F.3d at 1013 (citing *Illinois Sch. Dist. Agency v. Pac. Ins. Co.*, 471 F.3d 714, 719 (7th Cir. 2006)). For equitable estoppel to apply, a plaintiff must show that the insurance company misled her into thinking it would pay, that the plaintiff reasonably relied on a misleading act or statement, and that there was prejudiced as a result. *Id.* at 1013 (citing *Nationwide Mut. Ins. Co. v. Filos*, 673 N.E.2d 1099, 1105 (1996) ("the insured must establish the elements of estoppel: that he was misled by an act or statement of Nationwide, he reasonably relied on the conduct or representation, and he was prejudiced thereby")); *Rosemoor Suites, LLC v. Harleysville Lake States Ins. Co.*, 444 F. Supp. 3d 902, 909 (N.D. Ill. 2020).

Serauskas relies on equitable estoppel in her complaint, *see* dkt. 1-1 at ¶¶ 35–40, as articulated in *Lumbermen's Mutual Casualty Co. v. Sykes*, 890 N.E.2d 1086, 1101 (Ill. App. Ct. 2008) (cleaned up). *Lumberman's* explained estoppel in this way: the insured must establish (1) that he was misled by the acts or statements of the insurer or its agent; (2) reliance by the insured on those representations; (3) that such reliance was reasonable; and (4) detriment or prejudice suffered by the insured based on the reliance." *Id.* As explained above, however, Serauskas is not an insured within the meaning of the Policy, but her claim is pled as though she is. *See, e.g*, Dkt 1-1, ¶ 37 ("Defendant Liberty Mutual misled the insured through its conduct" causing her not to purchase replacement insurance.) Nor do the briefs sufficiently address whether she can pursue equitable estoppel under Illinois law when she is not insured under the Policy.

Still, this may not foreclose all relief under Illinois law. Equitable remedies "protect plaintiffs who don't have legal recourse under contract law." *Plestsov v. GTS Transportation Corp.*, 2020 WL 6059854, at *3 (N.D. Ill. Oct. 14, 2020). Equitable

7

remedies "apply to situations involving implied contracts, invalid contracts, or claims that fall outside contracts. The law permits recovery in these instances because the defendants received a benefit that would be inequitable for them to retain without payment." *Id.* Waiver, as Liberty Mutual points out, is closely related to equitable estoppel is but is a distinct equitable doctrine. *Lumbermen's*, 890 N.E.2d at 1097 (observing that waiver is a distinct equitable principle from estoppel, and that "implied waiver arises when conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive it.")

In Illinois, "[a]n insurer may waive a policy defense by continuing under a policy when it knows, or in the exercise of ordinary diligence, could have known the facts in question giving rise to the defense." *Id.* at 1100 (citing *Am. States Ins. Co. v. Nat'l Cycle, Inc.*, 631 N.E.2d 1292, 1298 (Ill. App. Ct. 1994). If the insured could have known the facts giving rise to the defense, "it can be said that the insurer has constructive knowledge of the relevant facts, and that constructive knowledge may be sufficient to form the basis of waiver even if actual knowledge is absent." *Id.*; *Nat'l Fire & Marine Ins. Co. v. 3327 W. 47th Place, LLC*, 2017 WL 5499154, at *3 (N.D. Ill. Nov. 16, 2017) (analyzing constructive knowledge waiver and waiver based on failure to return insurance premiums).

Here, Serauskas's complaint alleges facts that appear to be aimed at waiver. She alleges, without elaboration, that Liberty Mutual "knew or should have known that Estelle Bielecki was deceased prior to issuing the insurance policy in 2012 and every subsequent year thereafter." [Dkt. 1-1, ¶ 36.] In her opposition brief, she argues that Estelle would have been 107 years old as of the date of the most recent renewal for August 2024, yet the underwriter automatically renewed the Policy anyway. [Dkt. 13 at 5.]

To be clear: the court is in no way suggesting that Serauskas could successfully plead let alone prevail on any claim for equitable relief. But there is no doubt that her estoppel claim as currently pled cannot stand, if only because it is premised on the faulty assumption that Serauskas is an insured within the meaning of the Policy. So, the estoppel is dismissed without prejudice.

### D. Equitable Lien

Finally, Serauskas brings a claim for equitable lien, which is a state law remedy that "may be imposed in the absence of an express agreement out of considerations of fairness." *Uptown National Bank of Chicago v. Stramer*, 578 N.E.2d 1165, 1168 (Ill. App. 1991).

An equitable lien "is a remedy for a debt that cannot be legally enforced but, based upon considerations of right and fairness, should be recognized." *Bank of Am., N.A. v. Schroeder*, 189 N.E.3d 1073, 1083 (Ill. App. Ct. 2021). To assert an equitable lien, a plaintiff must show (1) a debt, duty or obligation owing by one person to

another, and (2) a *res* to which that obligation fastens." *W.E. Erickson Constr., Inc. v. Congress-Kenilworth Corp.*, 477 N.E.2d 513, 521 (1985).

Here, Serauskas alleges that as a person with "an insurable interest in property [who] pays the premiums" she may be entitled to an equitable lien on the policy proceeds to prevent Liberty Mutual from "unjustly keeping or diverting proceeds when the real economic interest in the property lies with another party." [Dkt. 1-1, ¶ 44.][4] This allegation as pled does not allow for the reasonable inference that Liberty Mutual owes Serauskas a debt, duty, or obligation. This claim is also dismissed without prejudice.

## IV. Conclusion

The motion to dismiss is granted. A plaintiff is ordinarily provided with an opportunity to file an amended complaint. Amending the breach of contract and vexatious conduct claims would be futile, so these claims are dismissed with prejudice. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 518 (7th Cir. 2015) (plaintiffs are ordinarily given at least one opportunity to amend a complaint "[u]nless it is *certain* from the face of the complaint that any amendment would be futile"). The remaining claims are dismissed without prejudice.

Enter: 25-cv-12474
Date: February 4, 2026

_____
Lindsay C. Jenkins

---

[4] Serauskas's brief cites *Marbach v. Gnadl*, but she makes no attempt to explain how that case applies to the facts of this case. 219 N.E.2d 572 (Ill. 1966) (where a building sold under an installment contract was completely destroyed by fire, plaintiffs were entitled to an equitable lien on proceeds of the fire policies).